(43 South. 258.)

No. 16,315.

PRATER et al. v. CRAIGHEAD.

(Feb. 18, 1907. Rehearing Denied March 18, 1907.)

1. APPEARANCE—APPLICATION TO BOND—EFFECT.

Plaintiff, simultaneously with filing his petition in a petitory action, applied for and obtained an order for a sequestration, under which the sheriff claimed to have executed the writ by taking possession of the property. The defendant thereafter filed an application to bond the property, declaring in the same that he appeared solely for the purpose of the application, without acknowledging the validity of the writ nor the regularity of its service and execution, and without waiving his right to except to the writ of citation and reserving all other exceptions, pleas, and defenses. Under permission from the court he bonded the property.

He excepted later that he had not been cited. He had not at the time of the bonding in fact been cited. The court overruled the exception, on the ground that he had waived citation by making an appearance bond. *Held* that, whatever effect resulted from the appearance to bond, it had no relation back of the date of the application. The fact did not entitle the plaintiff to claim that defendant had been previously cited, when such was not the fact.

2. TAXATION—TAX TITLES—PETITORY ACTION —PRESCRIPTION — RUNNING OF STATUTE — COMMENCEMENT OF ACTION.

Defendant, in the petitory action, set up title to the property claimed by plaintiff under a tax sale, and pleaded the prescription of three years provided for by article 233 of the Constitution of 1898. The court correctly sustained the plea. At the time of the bonding, prescription had accrued.

3. SAME.

The bringing of a petitory action by a plaintiff does not, by citation of the defendant therein, interrupt the running of prescription, under article 233 of the Constitution of 1898, in favor of the purchaser at the sale, unless the tax sale under which the defendant holds the property is therein attacked. Nor does the taking of the property out of the possession of the defendant, and placing it in custodia legis, under a writ of sequestration, do so. The rights conferred upon the purchaser at a tax sale by article 233 of the Constitution do not create in his favor a prescription "acquirendi causa." Questions of possession which arise under a plea of prescription acquirendi causa do not arise in this case.

4. SAME—REDEMPTION—TENDER.

None of the grounds urged by plaintiff by way of objection to the introduction of defendant's title under the tax sale were of character such as could be set up against the sale, in spite of article 233 of the Constitution of 1898.

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Albert Campbell Allen, Judge.

Action by Adeline Prater and others against Charles D. Craighead. Judgment for defendant, and plaintiffs appeal. Affirmed.

Charles Frank Borah, for appellants. O'Niell & Alpha, for appellee.

## Statement of the Case.

NICHOLLS, J. This is a petitory action, brought by the administrators of the succession of William E. Prater and by his surviving widow and heirs. The property claimed are lots 1, 2, 3, 4, 5, and 6, of section 22, township 15 south, range 11 east, and lots 1, 2, 3, 4, 5, and 6 of section 4, township 16 south, range 11 east, all situated in the parish of St. Mary. The petition was filed on the 8th of August, 1905. It is averred that William E. Prater acquired the property by purchase from B. A. Hampton by deed duly recorded in the parish of St. Mary, on April 8, 1904; that Hampton acquired the same by patents from the state of Louisiana, which were duly recorded on the same date; that Prater never parted himself with his title, nor had he been divested of the same, but died the owner and possessor thereof; that they had recently been informed that the defendant, Charles D. Craighead, a resident of the parish of St. Mary, was then trespassing upon said lands, and was preparing to cut, pull, and remove the timber therefrom, and was then digging canals through the lands in order to operate his pull boats; that his actions were unwarranted in law; that his possession was without title or right as owner of said property, but only as a trespasser; that the only thing of value upon said land was the timber growing upon the same; and that Craighead was preparing to remove the timber from the portion of the land situated in township 15 south, range 11 east, and, unless prevented from so doing by a judicial sequestration, he would denude the land of the timber and take from it the only thing of value. They prayed that a writ of sequestration issue, directing the sheriff of St. Mary to seize and take into his possession the property then being trespassed upon

situated in township 16 south, range 11 east, viz., lots 1 to 7, inclusive, of section 3 and lots 1, 2, and 3 of section 4, as well as all timber that may be deadened, felled, or lying upon said lands, reserving their right to claim thereafter a sequestration of the lands in section 22. They prayed for citation upon Craighead and for judgment recognizing them as owners of and entitled ·to the possession of the property described.

A writ of sequestration was ordered to issue as prayed for. A writ of sequestration issued, and was placed in the hands of the sheriff, and copies thereof, also copies of the petition.

On the 2d of October, 1905, Chris Peterson, deputy sheriff, made the following return to the court:

"Received this citation in office on the 8th of August, 1905, and on the 9th day of August, 1905, I served a copy of the within citation and a copy of the original petition and copy of writ of judicial sequestration accompanying the same on the defendant, Charles D. Craighead, herein named, by leaving same at his domicile in the hands of Mrs. E. S. Bowman, a person apparently above the age of 14 years, living and residing in the said domicile with the defendant, whose name and the other facts connected with this service I learned by interrogating the said Mrs. E. S. Bowman; the said defendant being absent from his said domicile at the time of said service. Service made at Patterson parish of St. Mary, 18 miles from the courthouse at Franklin, La."

On the same day he made the following return upon the writ of sequestration:

"Received this writ in office on the 8th day of August, 1905, and on the 9th day of August, 1905, duly executed the same, taking into my possession the property fully described herein, and served a duly certified copy of said writ on Mrs. E. S. Bowman, a person living and residing at the domicile of C. D. Craighead, the defendant herein named; he being absent at the time of service. The name of the person and the facts connected with this service I learned by interrogating the said Mrs. E. S. Bowman; she being the mother-in-law of Mr. Craighead, a person apparently above the age of 14 years."

On September 9, 1905, the defendant filed in court an application for the release of the property ordered to be sequestered upon his

furnishing bond for such sum as the court might fix, as being equal to the value of the property to be left in his possession. In this application he declared that he appeared solely for the purpose of the application, and without acknowledging the validity of the writ, nor the regularity of its service and execution, and without waiving his right to except to the want of citation, and reserving any and all exceptions, dilatory, declinatory, and peremptory, he reserved the right to dissolve the writ on motion, and all other exceptions, pleas, and defenses. The court ordered that the property sequestered be released upon defendant's furnishing bond in the sum of $2,500.

On the 2d of October, 1905, the defendant excepted on the ground of want of citation, averring that he had never been served with, nor had he received, a citation, nor a copy thereof, nor a copy of the petition, nor of the writ of judicial sequestration, nor a notice of the seizure thereunder; that a party to whom the sheriff says in his return the citation with copy of petition and writ were handed was not a resident of, nor occupant of, exceptor's house, but a resident of New Orleans; that she was not residing with exceptor, as stated in the return, and did not state she resided there.

This exception was overruled on January 25, 1906, on the ground that the defendant, by bonding the property, had made an appearance in court and waived citation. On February 12, 1906, defendant answered, reserving the benefit of his exception of want of citation. After pleading the general issue, he admitted he was in possession of the land described in plaintiff's petition, and that his possession thereof was lawful and bona fide, under the titles which he set forth in his answer.

He averred that he was the absolute owner of the land described in lots 1, 2, 3, 4, 5, 6, and 7 of section 3, and lots 1, 2, and 3 of section 4, in township 16 south, range 11 east, which he acquired by authentic act of sale from Charles L. Wise, Joseph Schwartz, and James H. Prohaska, of date April 6, 1906, duly and seasonably recorded in Book 33 of Conveyances, folio 581, No. 34,655, of the recorder's office. That Wise, Schwartz, and Prohaska acquired by purchase from William H. Prater on May 14, 1902, by virtue of the tax sale made by the tax collector of St. Mary parish, duly recorded on August 15, 1902, in Book N of Conveyances in the recorder's office of St. Mary. That though the name is written and spelled "Prader" on the deed, the said land was properly assessed in the name of William H. Prater, and was sold for the taxes and as the property of William H. Prater, and that the spelling of the name Prater with a "d" instead of a "t" was an insignificant and unimportant typographical error, and could not possibly mislead any one, and in fact did not do so with regard to the identity of the said individual or the land described and sold, and that the name sounds the same whether spelled "Prader" or "Prater," and that the individual, whose name is written "William H. Prader" in the tax deed to Wise, Schwartz, and Prohaska, is the same individual whose name is written "William H. Prater" in the plaintiff's petition to their full knowledge. That the sale for taxes was made under a proper assessment for the taxes due the state of Louisiana and the parish of St. Mary for the year 1901, and was preceded and accompanied with all legal notice, advertisements, and other requirements of law. That he and his said vendors have had possession, and such active possession of the said land, as the same was susceptible of continuously, peaceably, openly, and notoriously, as owners under the aforesaid titles upon their face translative of property in good faith and without interruption, from the date of the purchase by the said Wise, Schwartz, and Prohaska, and respondent was not in any manner apprised or informed of the filing

or institution of the present suit until the 8th of September, 1905, and, without in any manner admitting or intimating that there were any illegalities, irregularities, or informalities in the aforesaid tax sale, or in the proceedings in the aforesaid tax sale, or in the proceedings under which it was made, he pleaded the prescription of three years accorded under the Constitution of this state in bar of any attack upon said tax title.

Respondent averred, with regard to the lands described as lots 1, 2, 3, 4, 5, and 6, of section 22, in township 15 south, range 11 east (being all of said fractional section), that he holds possession thereof under a contract conveying title to the timber thereon from Harry L. Laws, of date May 2, 1904, duly and seasonably recorded in Book of Conveyances "PP" of the recorder's office of St. Mary parish. That Laws acquired title to said land by purchase from Mrs. Georgine W. Thompson and Wibray J. Thompson, by authentic act of sale of February 6, 1902, duly recorded. That Mrs. Georgine W. Thompson, as widow in community, and Wibray J. Thompson, as sole heir, acquired from the succession of Daniel Thompson and were recognized as such and sent into possession by a judgment of the court of St. Mary parish under date of March 27, 1900, duly recorded. That Daniel Thompson acquired same during the community aforesaid from Pinckney Bethel by authentic act of sale of date February 10, 1871, duly recorded.

That Pinckney Bethel acquired same from C. and E. Cornay by authentic deed executed by Robert Hare, syndic of the insolvent estate, of December 19, 1870, duly recorded. That C. and E. Cornay acquired same by purchase from the state of Louisiana as per patent No. 6,115, duly recorded in the Book of Patents in the land office at Baton Rouge.

That the pretended patent to B. A. Hampton for said land was issued through an error on the part of the register or clerk in the land office at Baton Rouge, and that, when the error was discovered by James M. Smith, register of the land office, the said illegal patent to Hampton was promptly and duly canceled on the 5th day of December, 1899, with full and legal notice to him and to any and all persons claiming title by or through or under him, which judgment was duly recorded in Book of Conveyances in St. Mary parish on January 8, 1904. Defendant prayed that plaintiff's suit be dismissed and rejected at their costs; that his right of action for any and all damages suffered by the illegal issuance of the writ of sequestration, and expenses incurred in the dissolution thereof, be reserved; that he do have judgment recognizing his titles aforesaid and sustaining him in his possession of said lands.

The district court rendered judgment sustaining the plea of prescription pleaded by respondent of three years, predicated upon article 233 of the Constitution of the state, and dismissed and rejected plaintiffs' action.

It adjudged and decreed that defendant be recognized as the owner and possessor of the property sued for, to wit: Lots 1, 2, 3, 4, 5, 6, and 7, of section 3, and lots 1, 2, and 3, of section 4, in township 16 south, range 11 east, situated in the parish of St. Mary; also lots 1, 2, 3, 4, 5, and 6, of section 22, in township 15 south, range 11 east. It further set aside and dissolved the judicial writ of sequestration which issued in the case, and decreed that plaintiffs pay all costs.

Plaintiffs appealed. Defendant answered the appeal. In his answer he averred that, while the judgment finally rendered by the district court was entirely favorable to him, and he desired and prayed that the same be affirmed, nevertheless, there were various points upon which the district court reached conclusions unfavorable to him prior to the final decree upon which he desired a reversal of the rulings and conclusions of said court, and, therefore, availing himself of the provi-

sions of articles 888 and 889 of the Code of Practice, and following the ruling of the Supreme Court in City of New Orleans v. New Orleans Jockey Club, 115 La. 911, 40 South. 331, he alleged that the district court erred in the following rulings and conclusions on the following points:

First. It erred in overruling the exception of want of citation.

Second. It erred in not holding that it was the tax debtor's duty to furnish the assessor with his post office address, especially as he is not a nonresident of the parish, and it was impossible for the assessor to procure any more accurate address than that contained in the recorded deed. He represents that in no event does the law require that the tax collector must pursue the registered notice to see that it actually reaches the consignee.

Third. That the court erred in holding that the names "William H. Prader" and "William H. Prater" were not idem sonans.

Fourth. That the district court erred in the statement that the tax collector sold several tracts of land in bulk, because the tracing of the official map showed that the land sold for taxes was only one compact parcel, with only imaginary section lines running through it, and the tax collector fully complied with the provisions of the law, in that:

"He did offer for sale the least quantity of the land that any bidder would buy for the taxes, interest, and costs, and there being no bidder for less than the whole of said property," etc.

In view of the premises, he prayed that the judgment appealed from be affirmed, not only in so far as it maintains the plea of prescription filed by defendant, but also for the reasons above set forth, and in the alternative he prays that, in the event that the court should reverse the decisions and conclusions of the district court upon the said plea of prescription, then he prayed that the rulings and conclusions of the district court upon the four points set forth be reversed, and that the judgment be affirmed upon those points, and for these additional reasons.

## Opinion.

The evidence in the case discloses that B. A. Hampton's asserted title to the land in section 22, in township 15 south, range 11 east, which is the basis of that of the plaintiffs to the same land, was predicated upon a patent which issued to him from the state of Louisiana, but that, at the time it was issued, the state had already parted with its title to the land and had issued therefor a patent to C. and E. Cornay. On discovery of that fact, Hampton's patent was canceled by the state register. Defendant does not assert title to the land under the patent of the Cornays, but urges that he is in possession of the same under a contract of sale of the timber thereon made with H. L. Laws, who was himself the owner of the land under the latter patent. Plaintiffs concede that Laws' title is superior to their own, but they complain that the court should have decreed defendant to be the owner of the land when he did not claim to be such. That position is correct, but that is a matter in which the plaintiffs have no concern. Their own claim to ownership or possession of the land being rejected, they have no further legal interest concerning it.

Plaintiffs seek to have the judgment appealed from reversed, in so far as it sustained defendant's plea of prescription of three years advanced by defendant in support of his claim of ownership to the balance of the property described in plaintiff's petition, as derived from Wise, Schwartz, and Prohaska; the latter holding the same under an adjudication made to them of that property by the tax collector of the parish of St. Mary on the 14th of May, 1902, and the recording of the deed therefor having been made on the 15th of August, 1902, in the conveyance office in

the recorder's office in the parish of St. Mary. Plaintiff's claim to this property as against defendant was contained in their petitory action filed on the 8th of August, 1905, and their attack upon the adjudication made by the sheriff to Wise, Schwartz, and Prohaska on the 14th of May, 1905, was raised on the trial of the case, May 3, 1906, through objections to the testimony offered by defendant to sustain their title under the tax title.

Notwithstanding the broad provisions of article 233 of the Constitution, limiting, after the three years referred to therein, the grounds of attack upon tax sales to dual assessment and payment of the taxes for which the property was sold, prior to the date of the sale, there are others of so radical a character as on account of their existence to forcedly read into that article grounds of objection additional to the two mentioned therein. The objections urged in this case were not of that character, and it is necessary to discuss them only in the event that we should hold that prescription had not accrued. The objections urged in this case were:

First. The property was not assessed, nor advertised for sale, in the name of "William H. Prater," but of "William H. Prader."

Second. That the notice required to be given to delinquent tax debtors had not been given as required by law to "William H. Prater."

Third. That the sheriff had not complied with the law that required him to offer the least quantity of land sufficient to pay the taxes.

Fourth. That the sheriff had not made out a list of delinquent taxpayers to whom he had mailed registered notices and filed same with the clerk of court, as required by law. Plaintiffs maintain that the legal proceedings which have been resorted to by them in this case have had the effect of preventing the running of the prescription invoked. They insist that the petitory action which they instituted against the defendant was, of necessity, an attack upon the tax title of the 14th of May, 1902, as that was the title which he set up in his answer and upon which he relied. They also maintain that the sequestration of the property and the taking possession of the same by the court had likewise barred the running of prescription.

We do not think the mere institution of an ordinary petitory action would have the effect of preventing the running of prescription from the date of the citation therein, unless in plaintiff's petition the tax sale should have been directly referred to and attacked. The inferential attack on any title, under which defendants might hold the property resulting from plaintiff's assertion of her own, is not, in our opinion, sufficient. The first attack in this case on the tax title was that made on the trial of the case on December ———, when plaintiffs objected to the admission by the defendant of evidence to establish it. Prescription had then accrued in favor of the tax purchaser.

We may say here that defendant was never, in point of fact, cited in this case. The evidence establishes affirmatively in our opinion the incorrectness of the return of the sheriff that he had cited the defendant by service upon Mrs. Bowman, then living in the house of the defendant, which fact he ascertained by interrogating her. So far from making such a statement to him, she expressly refused to receive, and never received, the papers which were attempted to be served on her telling the deputy sheriff that she was only temporarily in the house, and had nothing to do with the defendant. The papers were not left at the house, but were turned over to Mr. Mayrou, who did not live there, and had no connection with the defendant. We do not think there is any evidence which would warrant the assertion that Mayrou attempted to "entrap" and did "entrap" the deputy into leaving the papers with him. The most that was done by the defendant

bearing upon the subject of citation was that he appeared to bond, and did bond, the property, which was sequestered. The court held that by so doing he made an appearance in the case, and by so doing made citation unnecessary. . We do not think that that fact had the effect of enabling the plaintiff to claim that the defendant had been cited previously, when such was not the fact. Such effect as resulted from the fact of bonding bore date of bonding, and not back by relation. Elder v. Ludeling, 50 La. Ann. 1077, 23 South. 929; Union Iron & Foundry Co. v. Sonnefield & Emmins, 113 La. 436, 37 South. 20.

Plaintiff was never in possession of the property in litigation. The running of prescription in favor of the tax purchaser was not, in the opinion of the court, influenced by the fact that the property was taken out of the possession of the defendant and placed in custodia legis under the writ of sequestration. The rights accruing to a tax purchaser at a tax sale through the provisions of article 233 of the Constitution of 1898 are not operated through a prescription then created acquirendi causa. Questions of prescription through possession, which arise under that character of prescription, have no bearing in this case.

Plaintiffs finally contend that they made a proper tender for the redemption of the land, and by the effect of the same the land was redeemed. Citing Betz v. Illinois Cent. R. Co., 52 La. Ann. 915, 24 South. 644.

Referring to that matter, the court, after quoting section 63 of Act No. 170, p. 376, of 1898, said:

"The sale was filed and recorded on August 15, 1902, and on the 15th of August, 1905, the plaintiff tendered to the tax collector, through the cashier of the First National Bank, the amount of the taxes, with interest and costs; but the sheriff refused to receive it. Section 65, p. 377, of Act No. 170, declares that the money can be deposited with the collector when the purchaser cannot be found, or when the purchaser declines. There is nothing in the proof to show that the purchaser declined, or could not be found, but the proof does show that the purchaser lives in this parish. In fact, the order to the cashier of the bank was to pay direct to the sheriff. The tender, to have effect, should have been made to the purchaser, and, in the event of his refusal, it should have been deposited as tender for deposit to the tax collector."

These facts recited are not controverted. We find no error in the conclusions of the trial judge on that subject.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed.